# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LATASHA PERINE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 1:19-01132-CG-N |
| | ) |
| BISHOP STATE COMMUNITY COLLEGE, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATIONS

This action is before the Court on Defendant Bishop State Community College's ("BSCC's") Motion to Dismiss, or, in the Alternative, Motion for a More Definite Statement (Doc. 11). The undersigned entered an order directing the *Pro se* Plaintiff Latasha Perine ("Perine) to respond to the motion on or before July 6 , 2020 (Doc. 14). The Court's order has not been returned as undeliverable. To date, Plaintiff has failed to respond on any manner. The motion is now ripe and has been referred to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)–(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (10/7/2020 electronic referral). Upon consideration, the undersigned **RECOMENDS** that the Defendant's Motion to Dismiss be **GRANTED** as to Perine's Americans with Disabilities Act claims and Rehabilitation Act claims.

## I. Background

Perine alleges BSCC violated the Americans with Disabilities Act ("ADA")[1] and the Rehabilitation Act ("RA")[2] by terminating her employment. (Doc. 1, PageID.3). Specifically, Perine alleges BSCC fired her in retaliation for her advocacy to ensure the College's ADA Office was in compliance with federal law. (Doc. 1, PageID.3).

Perine worked at Bishop State Community College for just over one year. (Doc. 1, PageID.2). She makes the following factual allegations, utilizing the pre-formatted EEOC complaint available from the Southern District of Alabama website:[3]

> On April 11, 2019, I was retaliated against and wrongly terminated after advocating for the ADA Office to come in compliance with providing service that promote[s] equal access to students with disabilities. I advocated for the ADA Office to provide a variety of assistive technology to help student[]s access materials in altern[a]tive format. The office does not have specific software or hardware to support low vision, blind, dyslexic, or hearing impaired students. I recommend the office should have a Testing Center and a minimum of one accessible station in the ADA Office, the library, and the Learning Center. After advocating, I was retaliated and discriminated against in violation of Section 504 of the Rehabilitation Act of 1973.

(Doc. 1, PageID.3). Perine cites the RA in her factual summary, while also indicating in Section 8.B of her complaint that BSCC violated the ADA by discriminating against her on account of her physical and mental disability. (Doc. 1, PageID.2). Perine filed a charge with the Equal Employment Opportunity Commission ("EEOC")

---

[1] The ADA is codified in 42 U.S.C. §§ 12111–12117.

[2] The RA is codified in 42 U.S.C. §§ 701–718.

[3] The form complaint is available at https://www.alsd.uscourts.gov/forms/all-forms.

on July 15, 2019. (Doc. 1, PageID.3). The EEOC declined to pursue the charge, claiming that it was unable to conclude that the information alleged by Perine violated the cited statutes. (Doc. 1, PageID.4). Perine received a Notice of a Right to Sue Letter from the EEOC on October 2, 2019. (Doc. 1, PageID.3).

## **II. Discussion**

BSCC raises the following issues in its "Motion to Dismiss, or, in the Alternative, Motion for a More Definite Statement" (Doc. 11): (1) Perine's ADA claims should be dismissed because BSCC is protected by sovereign immunity; and (2) Perine's RA claims fails to state a claim upon which relief can be granted (or should be amended to provide a more definite statement). Each issue is discussed in turn.

A. Sovereign Immunity

BSCC first claims immunity from Perine's ADA discrimination and retaliation claims as an arm of the State of Alabama. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). However, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Id.* (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). Congress has not abrogated sovereign immunity in ADA cases, *Garrett*, 531 U.S. at 360, and Alabama has unequivocally reserved its sovereign immunity, *see*

3

Ala. Const. art. I, § 14 ("[T]he State of Alabama shall never be made a defendant in any court of law or equity."); *Patterson v. Gladwin Corp.*, 835 So. 2d 137, 142 (Ala. 2002) (noting that Alabama's reservation of sovereign immunity is "nearly impregnable").

Sovereign immunity also extends to entities that function as an "arm of the state." *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280 (1977). In determining if an entity qualifies as an arm of the state, the Court considers the following factors: "(1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1231 (11th Cir. 2000).

Here, it appears that BSCC qualifies as an arm of the state entitled to sovereign immunity. "It is well-settled that a state educational institution, such as a community college, is an 'arm of the state' and 'is entitled to Eleventh Amendment immunity.' " *Moore v. Baker*, No. CV-2:18-311-KD-B, 2019 WL 1374674, at *5 (S.D. Ala. Mar. 8, 2019) (quoting *Morris v. Wallace Cmty. College-Selma*, 125 F.Supp.2d 1315, 1335 (S.D. Ala. 2001), *adopted by* No. CV-2:18-311-KD-B, 2019 WL 1371143 (S.D. Ala. Mar. 26, 2019); *see also Foster v. Auburn Univ. Montgomery*, No. 2:11-CV-503-WHA, 2012 WL 786959, at *2 (M.D. Ala. Mar. 12, 2012) ("Alabama courts have consistently held that state run institutions of higher education are arms of the state."); *Morris*, 125 F. Supp. 2d at 1336 (holding that an Alabama community college qualifies as an arm of the state entitled to sovereign immunity under the four-factor

4

test laid out in *Miccosukee Tribe of Indians of Florida*), *aff'd sub nom. Morris v. Wallace Cmty. Coll.-Selma*, 34 F. App'x 388 (11th Cir. 2002). More specifically, BSCC is generally treated as an arm of the state of Alabama entitled to sovereign immunity. *E.g.*, *Batley v. Bishop State Cmty. Coll.*, No. CV-19-1043-CG-MU, 2020 WL 3948973, at *4 (S.D. Ala. Apr. 28, 2020), *adopted by* No. CV-19-1043-CG-MU, 2020 WL 3895774 (S.D. Ala. July 10, 2020). Accordingly, Perine's ADA claims for discrimination and retaliation against BSCC are barred by sovereign immunity and should be dismissed.[4]

B. Failure to State a Claim

BSCC next moves to dismiss Perine's RA claims for failure to state a claim upon which relief may be granted, or, in the alternative, for Perine to provide a more definite statement. In the complaint, Perine alleges that BSCC "retaliated and discriminated against" her "in violation" of the RA. (Doc. 1, PageID.3).

In deciding a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," the Court construes the complaint in the light most favorable to the plaintiff, "accepting all well-pleaded facts that are alleged therein to be true." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (citing *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006)). "To survive . . .

---

[4] Sovereign immunity does not bar Perine's RA claims. *See Garrett v. Univ. of Alabama at Birmingham Bd. of Trustees*, 344 F.3d 1288, 1293 (11th Cir. 2003) (per curiam) (holding that the RA pierces state sovereign immunity because it "unambiguously conditions the receipt of federal funds on a waiver of Eleventh Amendment immunity to claims under section 504 of the Rehabilitation Act").

5

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but [rather] asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556 (internal citations omitted)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 556 (internal citations omitted)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'" *Id.*, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

Complaints drafted by *pro se* litigants are held to "less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). "Yet even in the case of pro se litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order

6

to sustain an action." *Campbell*, 760 F.3d at 1169 (quoting *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).

To make out a prima facie case of RA discrimination, Perine must allege facts sufficient to allow for a plausible inference that (1) she had a disability; (2) she was otherwise qualified for the position; and (3) she was subjected to unlawful discrimination as a result of her disability. *See Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). To demonstrate that she had or was perceived to have a "disability," Perine must show that she suffers from

> "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A). The term "major life activities" includes, but is not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (emphasis supplied). A "major life activity" can also include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).

*Moore v. Jackson Cty. Bd. of Educ.*, 979 F. Supp. 2d 1251, 1258 (N.D. Ala. 2013) (footnotes omitted).[5]

Under this framework, Perine's claim for discrimination in violation of the RA fails. Perine does not allege any facts indicating that she suffered or was perceived to

---

[5] The *Moore* court analyzed an ADA discrimination claim, but the framework for analyzing a RA discrimination claim is identical. "The standard for determining liability under the Rehabilitation Act is the same as that under the Americans with Disabilities Act . . . thus, cases involving the ADA are precedent for those involving the Rehabilitation Act." *Ellis*, 432 F.3d at 1326 (citing *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000)).

7

suffer from a disability as defined above. The only indication that Perine wishes to bring an RA discrimination claim comes with her conclusory allegation that she was "discriminated against in violation of Section 504 of the Rehabilitation Act of 1973." Even under the liberal pleading standards afforded to *pro se* filings, this conclusory allegation cannot state a claim upon which relief may be granted and should be dismissed.

Perine's RA retaliation claim comes closer to surviving BSCC's motion to dismiss, but ultimately falls short. Borrowing again from ADA jurisprudence, the RA requires Perine to plausibly allege: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) the adverse employment action was causally related to the protected activity. *See Morales v. Georgia Dep't of Human Res.*, 446 F. App'x 179, 183 (11th Cir. 2011) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (discussing ADA retaliation)). Here, Perine alleges sufficient facts as to the second element of her retaliation claim: her claim that she was fired qualifies as an adverse employment action. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

However, Perine fails to allege sufficient facts as to the first and third elements of a viable RA retaliation claim. To show that she engaged in a statutorily protected activity, Perine must show "that [she] subjectively (that is, in good faith) believed

that his employer was engaged in unlawful . . . practices, but also that [her] belief was objectively reasonable in light of the facts and record presented." *Edwards v. Gwinnett Cty. Sch. Dist.*, 977 F. Supp. 2d 1322, 1331 (N.D. Ga. 2013) (alteration in original) (quoting *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). Perine alleges only that she advocated generally for the "ADA office to come in compliance with providing equal access" while claiming that BSCC did "not have specific software or hardware to support low vision, blind, dyslexic, or hearing impaired students." (Doc. 1, PageID.3). While these facts may serve as the nexus of a valid RA retaliation claim, without more details (e.g., the specific devices and software that BSCC allegedly failed to provide in its ADA office as well as the protected activity that Perine engaged in to oppose BSCC's alleged failure) Perine's complaint cannot satisfy the first prong.

Further, Perine fails to adequately allege a causal connection between her advocacy and her termination. "We construe the causal link element broadly so that 'a plaintiff merely has to prove that the protected activity and the . . . [adverse] action are not completely unrelated.'" *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (alteration in original) (quoting *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998)). "'A plaintiff satisfies this element if [s]he provides sufficient evidence' of [the employer's] knowledge of the protected expression and 'that there was a close temporal proximity between this awareness and the adverse . . . action.'" *Id.* (quoting *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n. 3 (11th Cir. 2003)). Here, Perine offers only the conclusory allegation that "[a]fter advocating, I was

9

retaliated and discriminated against . . . . (Doc. 1, PageID.3). Perine does not plead any facts establishing a timeframe for her alleged advocacy and termination, nor does she allege that BSCC was actually aware of her advocacy. Without more, as currently pleaded, Perine's RA retaliation claim fails to state a claim upon which relief may be granted and is due to be dismissed.[6]

C. Leave to Amend Certain Claims

Despite the deficiencies discussed above, the undersigned finds that Perine should be granted leave to amend *only* her RA retaliation claim. "When it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend [her] complaint instead of dismissing it with prejudice." *Jemison v. Mitchell*, 380 F. App'x 904, 907 (11th Cir. 2010) (per curiam) (emphasis added) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991) (per curiam) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (overruling *Bank* as to parties with counsel)). "Dismissal with prejudice is proper . . . if the *pro se* plaintiff has indicated that [s]he does not wish to amend his complaint or if a more carefully drafted complaint could not state a valid claim." *Id.*

---

[6] Accordingly, the Court need not address BSCC's alternative motion for a more definite statement.

10

Here, a more carefully drafted complaint would not overcome BSCC's sovereign immunity as to Perine's ADA claims or her RA discrimination claim. However, Perine should be granted leave to refile a more carefully drafted complaint as to her RA retaliation claim with attention to the deficiencies noted in Section II.B.

### III. Conclusion

Therefore, in accordance with the foregoing analysis, and pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S), the undersigned **RECOMMENDS** the following:

- Perine's claims under the ADA be **DISMISSED without prejudice** under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted;

- Perine's claims of RA discrimination be **DISMISSED without prejudice** under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted;

- Perine's claims of RA retaliation be **DISMISSED with leave to refile** under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything

in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 16th day of December 2020.

>   */s/ Katherine P. Nelson*
>   **KATHERINE P. NELSON**
>   **UNITED STATES MAGISTRATE JUDGE**